Burd v. Smith.

---

**\*76]**      **\*JANUARY TERM, 1802.**

Present, SMITH and BRACKENRIDGE, Justices of the Supreme Court, and COXE, RUSH and ADDISON, Presidents of the Common Pleas.

---

BURD, Plaintiff in error, *v.* SMITH, Lessee of FITZSIMONS *et al.* (*a*)*

### *Assignment for the benefit of creditors.*

A. being largely indebted, many of his creditors had commenced suit against him; and when some were on the eve of obtaining judgment, A. executed an assignment of several estates to B. and C., in trust to sell the same, and distribute the proceeds thereof, ratably and in proportion to the whole amount of the debts of A., among such of his creditors, as should, in writing, agree to accept the same, within nine months after the date of the assignment, and to pay to A. the shares of such creditors as should not so agree to accept their proportions, in order, that he might, therewith, compound with and satisfy such creditors: no schedule accompanied the deed; it was made without the consent of any of the creditors of A.; and there was no proof that the assignment was delivered to the assignees for more than two months after its date: *Held,* that the assignment was fraudulent in law, and void as against a creditor, who had obtained judgment previously to any one assenting to take under the assignment. ADDISON and COXE, JJ., dissenting. *Semble,* that voluntary assignments, stipulating for a general release to the debtor, or with a classification of creditors, according to which a priority of payment is to be observed, may be valid.(*b*)

---

(*a*) CHEW, President, and SHIPPEN, Chief Justice, declined sitting in the cause, on account of their connection with the parties. YEATES (who was also connected with the plaintiff in error), HENRY and RIDDLE, Justices, were absent. The session of the court was adjourned, for want of a *quorum*, from July 1801, to the 12th of January 1802.

(*b*) Independently of bankrupt laws, voluntary assignments may contain a preference to some creditors, and stipulate for a release to the debtor. Mather *v.* Pratt, *post*, p. 224; Lippincott *v.* Barker, 2 Binn. 174; McAllister *v.* Marshall, 6 Id. 338; Passmore *v.* Eldridge, 12 S. & R. 201; Hower *v.* Geesaman, 17 Id. 251; Harman's Lessee *v.* Reese, 1 Bro. 11; Pearpoint *v.* Graham, 4 W. C. C. 232; Marbury *v.* Brooks, 7 Wheat. 556.

[1] The record, pleadings and evidence in this case will be found in Brackenridge's Law Miscellanies, 438-57.     reasons of the judges are so indistinctly set forth, and the discrepancies of their views is so remarkable, as to render it of little value as a precedent for anything.

[2] Of this case, Chief Justice GIBSON says, in Thomas *v.* Jenks, 5 Rawle 225, that the

Burd v. Smith.

ERROR from the Supreme Court, on a judgment entered in pursuance of the following agreement :

" Montgomery county :

Richard Smith, Lessee of Thomas Fitzsimons, William McMutrie, Samuel W. Fisher, Philip Nicklin and Isaac Wharton v. Edward Burd.

Ejectment for 130 acres of land in Perkiomen township, in Montgomery county.

It is agreed, that the above action be entered, as an amicable action of trespass and ejectment, on the circuit court docket of Montgomery county, as of March term 1800 ; that a declaration and pleadings be filed, and issue joined conformable thereto ; *that the annexed state of a case be filed, as of June term 1800, in the nature of a special verdict, with an [*77 entry of the confession of lease, entry and ouster ; that judgment be rendered thereon for the plaintiff, without prejudice to the title or right of either party ; that a writ of error on the said judgment be taken from the supreme court, tested as of the last day of last December term, of the same court, and returnable in the same court, on the first day of March term following ; that the said judgment be affirmed, of course, in the said supreme court, as of the same term, without prejudice to the right of either party : and that no advantage be taken of any error in the form of the said proceedings, but everything be done to give them validity."

The material facts, contained in the case, to which the agreement referred, were these : " That the title-deeds of the land, mentioned in the declaration, were delivered to Mr. Dallas, by Mr. Blair McClenachan, previously to the 2d day of September 1797, to enable him to draw a trust-deed from McClenachan to him and Mr. Huston ; which was, accordingly, drawn and delivered by Mr. Dallas to Mr. McClenachan, for the purpose of having the same executed.

" That on the 2d of September 1797, Blair McClenachan was seised in fee of the premises ; and at the same time, was indebted, on his separate account, and in partnership with P. Moore, to divers persons (some of whom resided in Europe, and in other places beyond seas), in large sums of money, amounting, in the whole, to $435,073, and upwards. Many of the creditors had commenced suits in the supreme court against Blair McClenachan, and against McClenachan & Moore, which were depending on the said 2d of September 1797; in some of them, judgments were obtained on the 4th of September 1797, to the amount of $216,018 ; in others, judgments were obtained in December and March terms then following, to the amount of $22,720 ; and on the said judgments, or some of them, executions had issued.

"That Blair McClenachan and P. Moore, jointly or separately, not being able to satisfy and discharge the said debts, Blair McClenachan, on the 2d of September 1797, made and executed a certain indenture, for several estates, including the premises in the declaration mentioned, to A. J. Dallas and John H. Huston, containing (among other things) the following trusts, conditions and stipulations :

" Upon the special trust and confidence, and to the sole intent and purpose, that they the said Alexander James Dallas and John H. Huston, and the survivor of them, and the heirs of the survivor, shall sell and dispose of

Burd v. Smith.

the lands and premises hereby conveyed and granted, in such manner as the said trustees, or the survivor, or the heirs of the survivor, shall deem most *78] advisable for the *general interest of the aforesaid creditors, and upon the receipt of the purchase-moneys or securities for the same, the premises so sold, by deed or deeds, to grant and convey unto the purchaser or purchasers thereof in fee-simple; and that they, the said Alexander James Dallas and John H. Huston, and the survivor of them, and the heirs of the survivor, shall pay and distribute the moneys arising from such sale or sales (after all costs, charges and expenses attending this trust being deducted and paid) towards the payment and discharge of the debts of all such the aforesaid creditors, as shall in writing agree to accept the same, within nine months after the date hereof, at such times as the said trustees shall deem the most advisable, ratably and in proportion, according to the whole amount of the said debts of him, the said Blair McClenachan, and of the said partnership firm of Blair McClenachan and Patrick Moore, and to pay unto the said Blair McClenachan, his executors, administrators or assigns, the proportion of all such creditors as shall not signify their acceptance, within the specified time, to the intent that he may therewith and thereout compound with and satisfy such creditors. And if the moneys arising from the sale or sales of the lands and premises aforesaid shall be more than sufficient to answer the purposes aforesaid, that they, the said Alexander James Dallas and John H. Huston, and the survivor of them, and the heirs of the survivor, shall pay the overplus moneys unto the said Blair McClenachan, his executors, administrators or assigns. And the said Blair McClenachan, for himself, his heirs, executors and administrators, doth covenant, promise and agree to and with the said Alexander James Dallas and John H. Huston, and each of them, and the survivor of them, and the heirs and assigns of them, and the survivor of them, in manner and form following, that is to say, that he, the said Blair McClenachan, and his heirs, shall and will, from time to time, and at all times hereafter, upon the reasonable request and at the proper costs and charges of them, the said Alexander James Dallas and John H. Huston, or the survivor of them, or of the heirs or assigns of them, or of the survivor, make, execute and deliver, or cause to be made, executed and delivered, unto the said Alexander James Dallas and John H. Huston, or the survivor of them, or the heirs or assigns of them, or of the survivor, all such further and other acts, deeds, conveyances and assurances in the law whatsoever, for the better and more perfect granting, conveying, assuring and vesting the lands and premises aforesaid in them, the said Alexander James Dallas and John H. Huston, and the survivor of them, and the heirs and assigns of them, and of the survivor, upon the trust and confidence aforesaid, as the said Alexander James Dallas and John H. Huston, or the survivor of them, or the *79] heirs or assigns of them, or of the survivor, or their, or either of *their counsel learned in the law, shall reasonably devise, advise or require. And the said Blair McClenachan, and his heirs, the said lands and premises hereby granted, or mentioned or intended to be hereby granted, with the appurtenances, unto the said Alexander James Dallas and John H. Huston, and the survivor of them, and to the heirs and assigns of them, and of the survivor of them, against him the said Blair McClenachan, and his heirs, and against all and every other person or persons whomsoever, lawfully claiming

Burd v. Smith.

or to claim, by, from or under him, them, or any or either of them, shall and will well and truly warrant and for ever defend by these presents." And this indenture was acknowledged on the 4th of September 1797, by the said Blair McClenachan, in the absence of Mr. Dallas, one of the trustees, and no proof was given whether the other trustee was present or not. It was recorded in Philadelphia, on the 24th of November, and in Montgomery county, on the 27th of December 1797.

"That the yellow fever prevailed in the city of Philadelphia from the latter end of August, until the latter end of October, or beginning of November 1797 ; during which, the said trustees were absent from the city ; but a communication with some of the printers of the city was kept open, during the whole period, by the medium of the post-office.

"That on the 4th day of September 1797, Edward Burd (the defendant in the ejectment) obtained a judgment in the supreme court, against the said B. McClenachan, for $5333.33, besides interest and costs, with a stay of execution for sixty days. A *fi. fa.* was issued and returned upon this judgment, in the usual form to ground a *testatum ;* and on the 15th of November 1797, a *testatum fi. fa.* was issued to the sheriff of Montgomery county, which was delivered to the sheriff on the next day. On the 24th of November, levy was made upon the premises in the declaration mentioned ; on the 8th of December, an inquisition was held on the premises, which were condemned ; on the 7th of March 1798, a *vend. exponas* issued to the sheriff of Montgomery, and the premises were, thereupon, in due form, sold to the said Edward Burd, for 930*l.* ; on the 27th of March 1798, the sheriff made and acknowledged in open court, a deed for the premises to the said Edward Burd ; and shortly afterwards, delivered to him the possession.

"That the said Edward Burd had no knowledge or notice of the execution, or existence of the deed of trust to Dallas and Huston, or of the proceedings under it, until subsequent to the 12th of December 1797. That, on the 24th of November 1797, the trust deed was in the possession of the trustees, or one of them, by delivery of the said B. McClenachan ; but when the same was so delivered is not known. The other title-deeds remained in the possession of Mr. *Dallas, during the yellow fever of 1797, and until they were delivered by him to the lessors of the plaintiff.　[*80

"That on the 15th of December 1796, an advertisement was published, calling a meeting of the creditors of B. McClenachan, and of McClenachan & Moore ; and at the meeting, on the 17th of December, the creditors appointed a committee, though the minutes of the appointment, &c., were not signed. This committee, on the 19th of December 1796, published an advertisement, called a caution against making any purchases, or accepting any conveyances of B. McClenachan's estate, from him or his children ; to which McClenachan published an answer, on the same day ; and on the 21st of December, the committee replied. That on the 12th of December 1797, Mr. Huston, one of the trustees, published a notice of the trust-deed, to the creditors of McClenachan, and McClenachan & Moore ; and invited them to give notice of their acceptance in due time. On the 19th of December, the creditors met upon the subject, in pursuance of a call published in the papers of the 16th, 18th and 19th of December. At this meeting, the creditors expressed some dissatisfaction, relative to the assignment made as aforesaid to

Dallas and Huston, on a mistaken idea, that it contained a stipulation for a release; and the dissatisfaction went so far, that they determined not to accept the assignment on any such condition. But this mistake being corrected, the committee of the creditors, on the 31st of May 1798, gave notice of their acceptance of an interest under the trust; and on the 4th of June following, the trustees assigned the trust estate, including the premises mentioned in the declaration, to the lessors of the plaintiff, who continued to be the committee of the creditors, appointed by the minutes, as above mentioned, and were themselves creditors to a considerable amount. The assignment of the trust was acknowledged on the 9th of June, and recorded in Philadelphia, on the 12th of June 1798. That, on the 18th of March 1799, B. McClenachan applied to be discharged as an insolvent debtor; but was remanded by the court. (a)

The cause was argued, in this court, during the 12th, 13th, 14th and 15th of January 1802, by *Ingersoll*, *Lewis* and *McKean*, for the plaintiff in error; and by *L. Levy*, *Rawle* and *Dallas*, for the defendants in error. The immediate question to be decided was, whether, under the circumstances stated, the deed of trust from McClenachan to Dallas and Huston, *81]   was valid or void, in relation to the title acquired by the plaintiff in *error? But incidentally, the discussion embraced the general doctrine of the efficacy of voluntary conveyances by debtors, in trust for the benefit of creditors, upon specific conditions or stipulations. The points and authorities were as follows:

For the *plaintiff* in error.—1st. A voluntary conveyance of the description now under consideration, tends to defraud creditors of the just fruits of legal process. (2 Bac. Abr. 601; Cowp. 433.) And is, therefore, void under the statutes of 13 & 27 Eliz. On the face of the deed, it appears to have been intended to defeat judgment-creditors: to delay and hinder plaintiffs in their recoveries at law; or, to give it the most favorable construction, the deed was intended to preserve the property for creditors in general, instead of allowing those who were suitors in a court of law, the advantage due to their meritorious vigilance. 2d. The terms of the trust are indefinite as to its mode and time of execution, even in favor of the accepting creditors; while, from the very nature and operation of the deed, an interest is reserved for the debtor. Thus, only those who accept the trust, with all its appendages, can receive a benefit from it; and that benefit is confined to a share in the small part only of the debtor's estate, which the deed attempts to convey. Nine months are allowed for an election, to the creditors indiscriminately, during which, there could be no distribution, and after the lapse of that period, the debtor is entitled to the share of every non-accepting creditor, as well as to the intermediate perception of the rents, &c. But suppose, there was no accepting creditor, did not the property remain in the debtor? It did not pass to the general creditors; and the trustees had paid no consideration for it. 3d. Then, it is a fraud, where there is a conveyance to a trustee for the benefit of a debtor, and the strongest badges of

(a) Mr. McClenachan, on the first alarm of the failure of McClenachan & Moore, (whose business was left entirely to the management of Moore), made several voluntary conveyances to his children; and on this ground, principally, the supreme court refused to discharge him as an insolvent debtor.

fraud put in the books, are to be found in the present case : for the posses-
sion remains in McClenachan ; the trust was not announced, even by record-
ing, until the 24th of November 1797 ; the conveyance was made, pending
suits, to avoid judgments ; the deed is not made to a creditor, but to
strangers, of the debtor's own nomination ; and the possession of the
land was never delivered in pursuance of the deed. (Cowp. 435; 3 Co. 80;
2 Lev. 147.) Nay, even the deed itself was not delivered to the trustees, for
two months after its execution, during which period, McClenachan might
have destroyed it ; or he might have sold the land effectually to others, for
a valuable consideration. (2 Vern. 510.) 4th. The acceptance of the cred-
itors was a condition precedent to the raising of a use in their favor ; and if
no use was so raised, the conveyance to the trustees was merely voluntary,
and void by the statute of Eliz., against creditors. Besides, the perform-
ance of the condition precedent was legally barred, by the lien which [*82
the *testatum* execution had previously secured for the plaintiff *in
error. (2 Bac. Abr. 608 ; 1 Sid. 133 ; Cro. Jac. 454 ; 5 Vin. Abr. "Condi-
tion," 76, pl. 20; Ibid. 178, pl. 37; Ibid. 89, pl. 10.) 5th. By the express re-
quisition of the deed of trust, the acceptance of the creditors must be in writ-
ing ; and of course, no assent by implication, can render the use absolute.
(Cowp. 117 ; 1 Cha. Cas. 141, 143 ; 3 Co. 28 *b ;* Ibid. 29.) It is stated in
the case, that the creditors did once refuse to accept ; by which they had
determined their right of election, and could not afterwards reverse it ;
particularly so, as to affect and destroy the liens of judgment-creditors.
And even as to the act authorizing an acceptance, it is a mere minute of
proceedings of a meeting ; it is not subscribed by all the creditors at the
meeting ; and the notice from the committee can only operate, on the terms
of the trust, as a notice in writing, for those who actually signed it ; since,
a parol delegation of power to a committee, could not be deemed a perform-
ance in writing of the condition precedent. 6th. The plaintiff in error
obtained a lien upon the land by the delivery of the *testatum fi. fa.* to the
sheriff, on the 16th of November 1797 ; and the acceptance of the creditors
even by their committee, was not sooner than the 31st of May 1798. Then
it would be contrary to the principles of equity, and to the rules of law
that the estate thus vested by the execution, should be divested, by a rela
tion from the time of the acceptance to the date of the trust-deed, against a
person who is neither party nor privy to the acceptance, or the deed. 3 Co.
25, 27, 26; 2 Vin. Abr. 385, 286, 288, 287, pl. 3; 1 W. Black. 642; Plowd.
482 *b ;* 2 Vent. 200 *b ;* 13 Co. 21 *a ;* Finch 6 ; Style's Pr. Reg. 367; 18 Vin.
Abr. 162, pl. 1; 5 Co. 119 *b.*

For the *defendant* in error.—1st. The title of the lessors of the plaintiff
arises from a fair and honest transaction ; though it would be enough to
remark, that the silence of the verdict (as the case must be considered) is
a legal negative of the insinuation of fraud. (10 Co. 56.) And there is a
valuable consideration in law for the trust-deed, though it is no more than
five dollars ; which, however, coupled with a fair intention, completely vests
the title in the trustees. (2 Bl. Com. 296.) 2d. The statute of 13 Eliz., c.
5, secures the right of creditors, against motives of "malice, fraud, covin,
collusion and guile," by annulling the act which they produce. But if
the present case is not so generated, it is not an act within the letter of the

Burd v. Smith.

statute, "to the end and purpose to delay, hinder and defraud creditors and others, of their just and lawful actions." In the construction of the statute, t must also be remembered, that there is an essential difference between "the end and purpose," of an act, and the consequence and result which naturally follow it. For, certainly, a creditor, on the eve of obtaining a judgment, may be hindered or delayed, as the necessary consequence of his debtor's *making a conveyance of his estate, unquestionably valid, upon a *bond fide* sale. To invalidate a conveyance, therefore, there must not only be an intent, which consequentially hinders and delays the creditor ; but it must be a covinous and fraudulent intention, to that end and purpose. Giving, therefore, the statute the most liberal construction (and it ought to be liberally construed, Cowp. 434), still, the inquiry terminates, in ascertaining whether the conveyance is fraudulent, or not. (10 Co. 56 ; 1 Cha. Cas. 291 ; 1 Vent. 194 ; 1 Mod. 119 ; 1 Atk. 15 ; Cowp. 708, 434 ; 2 Ves. 11 ; 2 Atk. 481.) And what is fraudulent, depends on the moral intention ; on the impulse of the will to perform the act, which necessarily produces the obnoxious consequence. (Bull. N. P. 257.) By this test, what taint or color of fraud appears in the present case? The object of McClenachan was not fraudulently to hinder and delay any creditor ; but honestly to secure an equal distribution of the property among all the creditors. If the purpose was fair and lawful, the deed contains every formality that is necessary for carrying it into effect ; and on the 2d of September 1797, the legal estate was absolutely vested in Dallas and Huston. 3d. Reviewing, then, the opposite argument, let us give to each point an answer. It is urged, that the conveyance is not all McClenachan's property. We answer, that this does not appear from the facts stated ; but admitting it to be true, it strips the case of some of the badges of fraud imputed to it ; and leaves a fund to which the dissenting creditors might resort for satisfaction. Again, it is urged, that the deed was made to trustees of his own choice. We answer, that there is no authority that declares this to be fraudulent. In the case of General Stewart's settlement on Mrs. Stewart, though the whole field of legal objection seemed to travelled over, this obstacle never occurred. But it is of the essence of a voluntary conveyance, that trustees should not be forced on the debtor ; and as it is generally a case of confidence, not of interest, a friend or a brother is more naturally resorted to, than a creditor. If, indeed, the trustees were insolvent, or if any collusion could be charged upon them, it might be deemed a ground to suspect, repudiate and annul the act ; but the circumstances of the present case exclude every idea of the kind ; and a mere possibility of wrong affords no rule for argument. Again, it is urged, that the deed does not let in all creditors, but only such creditors as assent in writing, within a limited period. We answer, that the trust is open to all (Prec. Ch. 105), and that even if a particular class of creditors only had been included, the deed would have been valid. Again, it is urged, that the shares of the non-accepting creditors were to be paid to McClenachan, to enable him to compound with them. We answer, that there is no evidence in this, of a fraudulent intention ; for it is merely an arrangement to pay the same debts, through different hands ; *that it was a provision which depended entirely upon the creditors ; for if they accepted, there would be nothing payable to McClenachan ; that McClenachan's person was still liable to a *ca. sa.*, as no release was ex-

acted; and the effect of the arrangement is precisely the same, as would be produced by a *bonâ fide* sale of the premises. (4 T. R. 166.) Again, it is urged, that if the trustees had a right to sell, and did sell, before creditors assented, and none of them assented in nine months, the McClenachan must receive the whole of the money. We answer, that the objection proves too much; it attacks all voluntary assignments; and, indeed, almost all conveyances. Assent, *ex vi termini*, is a matter subsequent; and trustees never can certainly know, that the creditors will take their dividends. The rule is, that the legal estate must operate; and it vests, in the present instance, to the full extent of selling and conveying the property. If creditors will not then receive, does their refusal work an avoidance of the title of the vendee? The vendee, in fact and in law, has nothing to do with the creditors, though he is bound to see that the sale is in execution of the trust. (1 Vern. 260; 1 Ves. 173.) And the creditors may give notice, and afterwards claim. (1 Vern. 319.) Again, it is urged, that during the period of nine months, the trustees are restrained from making distribution. We answer, that it is proper in all such cases to fix a reasonable period of distribution; and that the bankrupt and the insolvent laws do so, as well as most voluntary conveyances. Whether the period of nine months is reasonable or not, must be determined; but it is unfair to argue, that the power to fix a reasonable period, carries with it a power to fix an unreasonable one. And here, it must be observed, that there is no right reserved by McClenachan to receive the rents of the premises, during that, or any other period. But if the trustees, either as to the sale, or the distribution, were guilty of any *laches* or irregularity, they might be controlled under the act of 1774. (1 Dall. Laws, 690.) Again, it is urged, that the possession was not changed. We answer, that the continuance of possession in the debtor, even of chattels (*à fortiori* of real estate), is not, in itself, fraudulent, but evidence of fraud, which may be rebutted. (1 Ld. Raym. 286; Prec. Chan. 285; 1 P. Wms. 321; 2 T. R. 587; Cowp. 435.) But the legal possession or seisin did pass to the trustees, according to the law of Pennsylvania, at the moment of executing the deed. Though no rent is paid, the possession of the lessee is the possession of the lessor. (4 Atk. 469; Shep. Touch. 65; Ambl. 599; 5 Co. 424-5; 1 Eq. Abr. 149; 1 Fonbl. 149.) Again, it is urged, that the deed was executed in secret, and not delivered to the trustees for some time after the execution; of which, too, the plaintiff in error had no notice until it was recorded, on the 24th of November 1797. We answer, that the execution of a deed does not [*85 call for publicity; that the case does not negative the fact, *that the deed was delivered to the trustees long before the 24th of November, but simply states that it was then in the possession of one of them; that the deed shows, by inspection, a sealing and delivering on the 2d of September, and the legal presumption, until the contrary is proved, is, that it remained with the trustees, from the time of the delivery; that the deed was recorded within six months, and thereby became good, even against a purchaser; and that there is no evidence or suggestion, that the plaintiff in error lost any opportunity of recovering his debt, by the transactions respecting the deed. (*Sheldon's Case*, Cro. Eliz. 7; Ibid. 483; 1 P. Wms. 205, 557.) 4th. Having thus reviewed and answered the opposite arguments, it remains to consider, in the abstract, whether the execution of the plaintiff in error, so intercepted

Burd v. Smith.

the interest in the land as to defeat the trust? From the very nature and operation of a trust, the legal title, an estate in fee, immediately passed from McClenachan to the trustees. (2 Bl. Com. 271.) Nothing was left to him, but a contingent equitable interest; if none of the creditors accepted; if only a part of the creditors accepted; or if there should be a surplus of property, after paying all the creditors. This equitable interest attaches to the land, if it is unsold; or it follows the proceeds of a sale, in the hands of the trustees; and this interest, and no more, is subject to the lien of a judgment-creditor (Gilb. Chan. 230; 2 P. Wms. 491; 2 Ves. 662; 1 Eq. Abr. 325; Pow. Mortg. 197), whose *testatum* into Montgomery county cannot, in this respect, enlarge his right or his security, beyond the effect of the judgment, upon lands in Philadelphia county. 5th. The right of a debtor to make a voluntary conveyance of his estate, independently of the statutes of bankruptcy, has never before been controverted, in England, or in Pennsylvania, even where a preference was given to one or more of the creditors, in exclusion of the rest. (1 Fonbl. 260; 5 T. R. 420; 8 Ibid. 521, 530; Prec. Ch. 105; 5 T. R. 530, 532.) The insolvent laws annul private family settlements made by a debtor. (1 Dall. Laws, 257, 259; 4 Ibid. 270), but as to voluntary assignments, the right to make them, and their validity when made, are expressly recognised. (1 Ibid. 690.) The practice of making them in various forms is notorious; sometimes, on condition of a general release to the debtor; sometimes, with a classification of property, according to which the sales must be effected; and sometimes, with a classification of creditors, according to which a priority of payment is to be observed. The courts of Pennsylvania have uniformly recognised and supported voluntary conveyances of these several descriptions, made *bonâ fide*, and not colorably, with a latent and fraudulent use for the debtor.(a) (1 Dall. 139, 430, 72; 2 Bl. Com. 333; *1 Co. 123; 2 Inst. 675, 671, 674–5; 1 P. Wms. 278; 1 Vern. 260; 10 Co. 56; Cro. Eliz. 550; 13 Vin. Abr. 554; 3 Ca. Chan. 85.) In *Mather* v. *Pratt et al.* (4 Dall. 224), the supreme court was of opinion, that the debtor might assign, for the benefit of one-half of his creditors, upon condition; and the plaintiff, a creditor, having sued the defendants, the voluntary assignees, without first complying with the condition of the assignment, was nonsuited.

The COURT, after taking time to deliberate, delivered opinions, *seriatim*, on the 20th of January 1802; of which the following is given as a general outline.

SMITH, Justice.—The question to be decided, is, whether the deed of trust is void or valid, as against the plaintiff in error, upon a just consideration of all the facts that belong to the case? The ostensible reason for creating the trust, is a desire to make a fair division of the property among all the creditors of Mr. McClenachan; and if this is the real and operative motive, the deed ought to be liberally construed, in order to give it effect: for equality is equity. There can be no doubt, likewise, of the right of a debtor (and cases may be easily conceived, in which it would be a duty),

(a) This was agreed to be law by the counsel on both sides; and SMITH, Justice (during the argument), declared, that it had been frequently so decided in the supreme court.

Burd v. Smith

independently of the bankrupt laws, to give a preference to some of his creditors, in exclusion of the rest; and from such a preference alone, the court would not be disposed, hastily, to infer collusion, secret trusts or meditated frauds. Hence, it is incumbent upon us to support the present deed of trust, unless, in its provisions and in its operation, it is calculated unlawfully to hinder and delay, to deceive and defraud, the creditors of the grantor. The facts stated in the case, do, indeed, acquit Mr. McClenachan of any intentional or moral fraud; but it is a distinct inquiry, and the only one before the court, whether they constitute a legal fraud; so as to vitiate and destroy the act, without criminating the agent.

We are sufficiently impressed with the magnitude of the subject, in all its aspects; as it regards the immediate claims of a numerous body of creditors and as it regards the precedent to be established for future times: but avoiding much extraneous matter, which was introduced into the argument, we shall form our judgments, exclusively, upon the facts contained in the special verdict. We find, then, that when Mr. McClenachan purposed to create the present trust, he was oppressed by an immovable weight of debt. He knew that many suits were instituted against him; that in some of these suits, judgments would certainly be obtained within forty-eight hours; and that in others, the delay of judgment could not exceed a term. The apprehension of these judgments produced the determination to make an assignment of the estate in trust. But still, if there is nothing unlawful in the mode of effectuating that determination, nothing to justify the suspicion of a latent unlawful purpose, the deed must, as *I have said, be sustained. The omissions, as well as the actions, of a man, will often, [*87 however, furnish evidence of his motives. In Mr. McClenachan's situation, why not call a meeting of his creditors? why not appoint some of them trustees? or why not openly state his object to be an equal distribution, and consult those who were most interested, as to the means of accomplishing that object? From the start, therefore, when things, which ought to have been done, in prudence, as well as candor, are not done, we find reason to suppose, that there is something more intended than is avowed. Again, when the deed is executed, no schedule designating the creditors, or explanatory of the debts and property, is annexed; so that the trustees remained ignorant (though the grantor was not) of the facts which were essential to the execution of the trust, until Mr. McClenachan's application to be discharged, as an insolvent debtor, in March 1789 : and until that period, in fact, the absolute control of the uses of the trust continued with him.

But on the very face of the deed, it is void in law. No debtor has a right to make his own trustees; and the very attempt would, under some circumstances, be considered as an act of bankruptcy. In a conflict between the debtor and his creditors, the trustees would generally prefer his interest; and it must be remarked, that the character and conduct of the present trustees cannot regulate the decision of a legal question. The assent of one party, as well as the proposition of the other, is necessary to complete every contract. (4 Burr. 2241.) The creditors could have no remedy against the trustees, before they assented; and if they did not assent, there was a resulting trust to the grantor, which placed them entirely at his mercy.

It is *petitio principii*, to argue on the ground that Mr. McClenachan might have sold and dissipated the property : and particularly, after the

Burd v. Smith.

caution published by their creditors, a purchaser would have run some risk in concluding this bargain. Lord MANSFIELD somewhere expressly states, that a purchase even for a valuable consideration, but with a view to defeat a judgment-creditor, is fraudulent and void.

On these grounds, therefore, that no schedule accompanied or followed the deed of trust; that the deed was made without the consent of any of the creditors; and that it contains a resulting trust to the grantor, thereby placing the dissenting creditors in his power; I think, the judgment of the supreme court ought to be reversed.

BRACKENRIDGE, Justice.—I think the deed of trust is void, for various reasons. 1st. The resulting trust, in case of a dissent on the part of the creditors, is for the debtor himself. 2d. The time for sale and distribution of the trust estate, is indefinite. 3d. The trust was not accepted by the trustees; or, at least, by the creditors. 4th. The trustees were appointed by the grantor *himself. 5th. There is no covenant to compel a sale and distribution. 6th. There is no schedule of the creditors, by which the trustees could know to whom distribution was to be made.

*88]

I will add a general observation. It has been said, that a debtor may favor particular creditors. The right has been allowed, perhaps, on a principle of humanity; or in favor of just debts, to exclude debts in law, not strictly *ex debito justitiæ*. But I do not think, that the practice should be encouraged: it is calculated to create confusion, uncertainty and collusion. I see nothing that will prevent the mischiefs of voluntary settlements, and conveyances, but a general declaration that they are all void, as against creditors. The general consent of creditors might, perhaps, be a ground of exception: but not even that should be admitted, to give retrospective force to a deed, with a view to cut out and defeat an intermediate lien. The judgment of the supreme court should be reversed.

RUSH, Justice.—Although it has been thought expedient to interweave a great variety of facts into the statement of the case now before the court, yet the decision rests upon a narrow ground. It is a controversy between the creditors of B. McClenachan, and the general question turns upon the validity of the deed of the 2d September 1797; by which, the premises mentioned in the declaration, and much other landed property, were conveyed in trust, to A. J. Dallas and John H. Huston, to sell and dispose thereof, in such manner as they should deem most advisable for the general interest of the creditors; and also that they should pay and distribute the moneys arising from the sales, toward the payment and discharge of the debts of all such of the creditors, as shall in writing, agree to accept the same, within nine months, after the date thereof, at such times as the said trustees shall deem most advisable, ratably and in proportion, according to the whole amount of the debts of the said B. McClenachan; and also that they, the said trustees, should pay unto the said B. McClenachan, his executors, administrators and assigns, the proportion of all such creditors as shall not signify their acceptance, within the specified time, to the intent that he may therewith and thereout compound with and satisfy such creditors.

If this deed be legal and valid, there is an end of the question. The claim of the plaintiff in error must instantly vanish out of sight. It is there-

Burd v. Smith.

fore proper to inquire.: 1st. Is this deed fraudulent or not? 2d. If it be not fraudulent, what is the true construction and operation of it ?

1st. The construction of all written instruments, is the peculiar and exclusive duty of courts. They alone decide on the face of *a deed, [*89 whether it be void or not; in which cases, such apparent fraud is called a fraud in law, because it does not depend upon any extrinsic matters of fact, but solely upon the inspection of the instrument, which must necessarily exclude the motive of the grantor.

The deed of September 2d, 1797, purports, on the face of it, to delay the creditors of their lawful suits, and is, therefore, within the statutes against fraud. Until the expiration of nine months, no distribution was to be made, nor any creditor paid, however vigilant he might have been. If a debtor may, in this mode, and by a device of this sort, frustrate his creditors for nine months, where shall the line be drawn ? Why not delay his suit for nine years, as well as nine months? His right is the same, in both cases. As there is no law of the land that authorizes a debtor to pass an act of limitation in his own favor, I hope this court will never do it for him. The conduct of the debtor, reduced to plain language, is this : I will bid defiance to my creditors, for any period I shall think proper to fix ; and this without their assent or concurrence. I will fix on such trustees as will favor me, by neglecting to advertise until the nine months are nearly expired, in order that a few creditors only may have notice of the trust, and signify their assent.

In deciding this cause, we are to consider it as a general question. The character of the present trustees is to be kept wholly out of view; for though they would act uprightly, there are other trustees that would act differently. Other trustees might advertise within the last month, in hopes, that only a few creditors would subscribe, and, consequently, the resulting fund be larger and more beneficial for the debtor.

The design of the statutes, is expressly to make void such deeds as tend to delay and frustrate creditors of their suits. It is not, therefore, material, whether the deed be made to trustees, for the benefit of the creditors, without their knowledge, if it produce this effect. The end shall in no case sanctify the means, and render that legal, which the law has pronounced fraudulent.

In the case before the court, we have an instance of a man plunged into debt, covered with law-suits, overwhelmed with judgments, and others impending over his head, suddenly and secretly, without the knowledge of a single creditor, conveying to trustees of his own nomination, an immense property, on such terms and in such manner as he has chosen to prescribe. I cannot conceive anything more dangerous, than to sanction by a judicial determination, a deed of this description. It will be vesting the debtor with unlimited power, at all times, over his property, to baffle his creditors, under the specious pretext of paying them.

*A decision of this sort is warranted by no adjudged case in the [*90 books. In *Estwick* v. *Caillaud*, 5 T. R. 420, all the creditors, except one, approved of the conveyance in trust, and that one had never sued Lord Abington, before the deed was executed. In *Inglis and others, assignees of Campbell, a bankrupt,* v. *Grant* (5 T. R. 530), it is expressly stated, not only

that the generality of the creditors assented to the trust, but the conveyance and covenant were with the creditors of Campbell.

The case of *Neeve and Ladbroke, assignees of Wilsmore,* v. *The Executors of Thomas Wilsmore,* was a conveyance in trust, to pay a debt due to one of the trustees ; without any clause limiting the creditors in point of time, with respect to their demands on the trustees.

From the nature and operation of the deed of the 2d September 1797, as well as by the express terms of it, the grantor has reserved an interest in himself, which is an acknowledged badge of fraud. It should be remembered, that this is an unsolicited deed to trustees, with an important resulting trust ; the value and amount of which is left entirely in the discretion of the trustees. By selling when they think advisable, and by omitting to give notice of, the trust for seven or eight months, nearly the whole property would, by these means, revert to the grantor. For these reasons, I am of opinion, the deed is fraudulent.

2d. But if it be not fraudulent, what are its true operation and construction, in point of law ? It might have happened, and in fact was very near taking place, that the condition on which the deed was to operate had altogether failed. It was not until the 31st May, that any of the creditors signified their assent in writing, as the deed required. It is certain, if no creditor had ever assented, that the trust would have been defeated, and the estate have continued in the grantor. Until the creditors, therefore, or some one of them, assented to the deed, it could have no possible operation, so as to accrue to their benefit. Until this event, the trustees were seised to the use of B. McClenachan, and the property remained liable to execution as his. Between the 2d day of September 1797, and the 31st of May following, the title to the premises in question was legally vested in the plaintiff in error, and could never afterwards be divested by any fiction of law.

Upon both these grounds, I am of opinion, that the judgment of the lower court should be reversed.

ADDISON, Justice.—All the points in discussion are reducible to the two questions : 1st. Is the deed of trust valid ? 2d. If it is valid, when did it commence its operation ?

1st. The deed that was executed for an honest purpose ; for the sole purpose of making an equal distribution of the property, among all the grantor's creditors ; and there is not the slightest symptom *of meditated fraud, in any part of the transaction. But the motive and the effect of setting this deed aside, will be to prefer the exclusive claim of an individual judgment-creditor, to the distributive claims of the general creditors ; so that by paying him the whole of his debt, they will be deprived of every part of their debts. I think it, therefore, a duty, by every legal and rational presumption, to support, if possible, the deed of trust ; and I find no difficulty, in pronouncing it, in the first place, to be a valid deed.

2d. I am likewise of opinion, that the deed took effect from its date. (*a*)

(*a*) The assent of a trustee to take the property conveyed to him is presumed, and the interest passes to him, from the time of the execution of the deed. Wilt *v.* Franklin, 1 Binn. 502; Nicoll *v.* Mumford, 4 Johns. Ch. 522.

It was susceptible of an honest execution ; and it has, in point of fact, been honestly executed. But an honest execution might have been enforced, if there had been any disposition to evade it. One of the trustees drew the deed, and his name is inserted in it. This was such evidence of an accept ance of the trust, as would be sufficient, with respect to that trustee, at least, to enable the creditors to compel him to perform it.

If the deed were framed for an unlawful purpose, or if, in its operation, it must necessarily introduce dishonest and fraudulent consequences, it ought to be set aside. But this admission does not affect its validity, merely because it tended to delay some creditors. The motive of the party must be weighed. If a deed, which delays and hinders a creditor, is made upon selfish interests, or upon a mere impulse of benevolence, it is within the statute : but a deed made upon a principle of equal justice to all creditors, however it may intercept the views of a particular creditor, is good in law, equity and conscience.

I cannot persuade myself to think, that a deed, formally made, with such honorable views, can be destroyed by the extrinsic considerations, that the grantor appointed the trustees ; that there was no general assent of creditors to the trust ; or that a schedule of the creditors was not annexed. And as to the reservation of a contingent interest or use for the grantor, it is enough to remark, that it arose out of the nature of the transaction ; that it could not take place, but by the negligence of the creditors them-selves ; and that any attempt of the trustees to favor the grantor, im-properly or dishonestly, would be defeated by the powers of a court of justice.

Upon the whole, therefore, my voice is **for affirming** the judgment of the supreme court.

CoxE, Justice.—I have been led to consider the case, with a double aspect, to ascertain, 1st. Whether the deed is, in itself, a good legal convey-ance ? And 2d. Whether the trust created by the deed is such as a court of equity would support ?

1st. We are bound by the facts stated in the case, or special verdict ; and there (independent of the deed itself), no allegation or suggestion of fraud can be discovered. Consider the transaction *in its progressive steps. The very execution of the deed (which the case states) im- [*92 ports a delivery ; and as the fact is not contradicted, it is a necessary legal presumption, that there was a delivery. The subsequent acknowledgment of the execution, is not inconsistent with this presumption ; because it is an acknowledgment, before a magistrate, of a previous delivery, for the pur-pose of placing the deed on record. The pecuniary consideration, though a nominal, is a legal consideration ; and this fortified by the equitable consid-eration, for which the deed was made, a payment of debts. Then, the acceptance of the trust, to execute it, is likewise a matter of legal presump-tion, from the delivery of the deed to the trustees ; and indeed, any other evidence of acceptance, is seldom to be obtained.

Still, however, the great question recurs : is the deed, on the face of it, a fraudulent, or a *bonâ fide*, conveyance ? A candid and just interpretation of the trust must enable us to decide. It is true, that the trustees derive from the deed a power to sell the property, as they deem most advisable ;

Burd v. Smith.

but this is a discretion to be exercised, expressly for the general interest of the creditors. It is true, that the trustees are only authorized to distribute the fund, among the creditors, who shall agree, in writing, within nine months, to accept their shares; but the exclusion from a share must be the act or omission of the creditor himself. It is true, that the shares of the non-assenting creditors are to be paid to Mr. McClenachan; but even this payment is to be made, "to the intent that he may therewith, and thereout, compound with and satisfy such creditors." These provisions, however, are the principal sources of objection to the deed itself, as inherent badges of legal fraud. But are there not, on the other hand, unequivocal marks of a fair and lawful trust, that must, at once, obviate and remove such slight and doubtful causes of suspicion? In the first place, there is an equal distribution of all the property conveyed, among all the creditors. In the next place, there is no stipulation for a release in favor of the grantor. And finally, the creditors, notwithstanding the acceptance of a share in this fund, are left free to pursue every legal remedy, for the recovery of a full satisfaction, against the person, as well as against any other property of their debtor. It is not to be denied, that the conveyance was made for the very purpose of hindering the lien of future judgments and executions upon the trust property; or, in other words, to preserve the property for an equal distribution among the creditors, instead of leaving it exposed to the priority of judgment-creditors alone : but so far from vitiating the deed, so far from justifying the imputation of fraud, this motive has been considered at the bar (and so I consider it) as the best foundation, in law and equity, for the trust. There is no positive statute, there is no rule of the common law, there is no principle of equity, to be traced in the code of England, or *93] of Pennsylvania, *that would warrant us in declaring this deed void upon such a view of its intention and its effect.

I will consider, however, more particularly, some of the additional objections that have been made to the validity of the deed, by the counsel for the plaintiff in error. 1st. It is said, that the trust is general; but both in the manner, and in the time, of executing it, the trustees must act conscientiously, or they will incur a responsibility as for a breach of trust. 2d. It is said, that the assent of the creditors, in writing, within nine months, is a condition precedent, to the investment of the trust. I am rather disposed, however, to treat it as a condition subsequent, for obvious reasons. The legal title passed on the execution of the deed, and the trust immediately attached to the estate. The assent of the creditors must, to be sure, be given afterwards, in order to entitle them to distributitive portions of the fund; but how is the assent to be made a condition precedent, in relation to the legal estate, and the trust, both of which were previously established? The trustees might have sold the property, immediately after the execution of the deed, before any assent declared ; and as to a declaration of assent in writing, this has always been regarded as a non-important part of the proceeding. 3d. It is said, however, that there should, in some form, be an assent of the creditors to the trust, in order to render it valid. A difficulty seems here to have arisen from confounding the particular assent, required by the deed to share in the trust fund ; and the presumed assent in law, from the date of the instrument ; for whenever a trust is raised for creditors, their acceptance of it is a legal presumption. Nothing remained in McClenachan from the execu-

Burd v. Smith.

tion of the deed, but a mere contingency; and even that contingency depended entirely upon the act of creditors. Until the trust was defeated, no judgment, or *testatum* execution, could affect the property; and, consequently, if it was a good subsisting trust, on the 2d of September 1797, it was good against all subsequent liens. 4th. It is said, that there was not a schedule of creditors annexed to the deed; but although this may be convenient to the execution of the trust, it does not appear to me to be essential to its validity. The trustees might easily have supplied the want of it, by calling a meeting of the creditors. And the nine months allowed for declaring their assent, and making a distribution, seems but a reasonable period, considering the dispersed state of the debts. 5th. It is said, that the payment of the shares of non-assenting creditors to McClenachan, placed them at his mercy; but suppose, the objection to this part of the deed should be well founded, does it follow, that the whole deed is void? Shall all the assenting creditors be deprived of their interest, because the dissenting creditors have produced a dilemma, in the appropriation of a part of the trust fund? I would rather say, that the trust is *bonâ fide* and operative, as to the assenting creditors; but void *in its modification, as to the shares of the dissenting creditors. (5 T. R. 432-4.) [*94

2d. It is my opinion, likewise, that the trust, created by this deed, would be supported and enforced in a court of equity. A condition subsequent (as I consider the assent in writing of the creditors to be) is seldom literally enforced in a court of equity, which looks only to the substance of the trust. For instance, either by negligence, or owing to the public calamity of the yellow fever, three months elapsed before the deed of trust was advertised; but chancery (where time, not being the material point, is often enlarged) would not allow this period to be lost to the creditors. It is not probable, therefore, that there would be an outstanding creditor, in such a case, as the present; and at all events, so remote a probability ought not affect the decision. A court of equity could, I think, mould all the powers and forms of the trust, so as to do complete justice to the parties. And what a court of equity would do, judges of Pennsylvania, deciding upon a subject of equity jurisdiction, are in the uniform practice of doing. For these reasons, I am of opinion, that the judgment of the supreme court ought to be affirmed.(a)

BY THE COURT, however, let the judgment be reversed.

---

(a) The principle, that in a voluntary assignment for the benefit of creditors, any reservation for the advantage of the debtor or his family, is fraudulent and invalidates the deed, has been frequently recognised and adopted.

The case of Austin v. Bell, 20 Johns. 442, was decided chiefly on the authority of Burd v. Smith. The only question arising on the application of this principle, has relation to its effect upon the deed, as avoiding it in part, or in whole. It would seem, that assignments with such a reservation are totally void. Passmore v. Eldridge, 12 S. & R. 201; McClurg v. Lecky, 3 P. & W. 73; Hyslop v. Clarke, 14 Johns. 458; Tucker v. Welsh, 17 Mass. 164; Harris v. Summer, 2 Pick. 129. But see Murray v. Riggs, 15 Johns. 571; Prince v. Shepard, 9 Pick. 176.